1  CHARLES PARKIN, City Attorney
   HOWARD D. RUSSELL, Principal Deputy City Attorney
2  State Bar No. 163595
   MATTHEW M. PETERS, Deputy City Attorney
3  State Bar No. 306959
   333 West Ocean Boulevard, 11th Floor
4  Long Beach, California 90802-4664
   Telephone:  (562) 570-2200
5  Facsimile:  (562) 436-1579

6  Attorneys for Defendants
   CITY OF LONG BEACH and FERNANDO ARCHULETA
7

8              UNITED STATES DISTRICT COURT

9              CENTRAL DISTRICT OF CALIFORNIA

10

11

12  RONALD CLARK, an individual,              Case No.: 2:18-cv-05350-CAS-RAOx

              Plaintiff,                      Honorable Christina A. Snyder
13

14       vs.
                                             **1. NOTICE OF MOTION AND**
15  CITY OF LONG BEACH, a municipal          **MOTION FOR SUMMARY**
    entity, OFFICER FERNANDO                 **JUDGMENT OR, IN THE**
16  ARCHULETA, an individual, and DOES       **ALTERNATIVE, PARTIAL**
    1-10 inclusive,                          **SUMMARY JUDGMENT;**
17
              Defendants.                    **2. MEMORANDUM OF POINTS**
18                                           **AND AUTHORITIES.**

19                                           *[Filed Concurrently with Proposed*
                                             *Statement of Uncontroverted Material*
20                                           *Facts and Conclusions of Law,*
                                             *Request for Judicial Notice,*
21                                           *Declaration of Matthew M. Peters,*
                                             *and Supporting Evidence]*

22                                           Date:            August 26, 2019
                                             Time:            10:00 a.m.
23                                           Location:        Courtroom 8D
                                             Complaint Filed: June 15, 2018
24                                           Trial Date:      October 8, 2019

25

26        TO PLAINTIFF AND HIS ATTORNEYS OF RECORD:

27        PLEASE TAKE NOTICE that on August 26, 2019 at 10:00 a.m., or as soon

28  thereafter as the matter may be heard in Courtroom 8D, at the First Street Courthouse,

OFFICE OF THE CITY ATTORNEY
CHARLES PARKIN, City Attorney
333 West Ocean Boulevard, 11th Floor
Long Beach, CA 90802-4664

1

**NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OR, IN THE
ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**

OFFICE OF THE CITY ATTORNEY
CHARLES PARKIN, City Attorney
333 West Ocean Boulevard, 11th Floor
Long Beach, CA 90802-4664

1  located at 350 W. First Street, Courtroom 8D, Los Angeles, California, the Honorable
2  Christina A. Snyder, Judge Presiding, Defendants, CITY OF LONG BEACH
3  ("Defendant City" or "City") and FERNANDO ARCHULETA ("Defendant
4  Archuleta" or "Officer Archuleta") (collectively "Defendants") will move this court
5  for an order granting summary judgment, or in the alternative, partial summary
6  judgment, in their favor and against Plaintiff RONALD CLARK ("Plaintiff") as to
7  each of the causes of action in the operative complaint.

8      Plaintiff's Complaint raises the following claims: (1) a Fourth Amendment
9  claim for excessive force against Defendant Archuleta, individually, under 42 U.S.C.
10  § 1983 [First Cause of Action]; (2) assault and battery claims against Defendants
11  Archuleta and City [Second Cause of Action]; and (3) a negligence claim against
12  Defendants Archuleta and City [Third Cause of Action].

13      Defendants seek summary judgment on the ground that as to each cause of
14  action there exists no triable issues of fact requiring the weighing process of the jury
15  and that the Defendants are entitled to a judgment as a matter of law. If the Court
16  determines that there is a triable issue on any cause of action, Defendants move this
17  Court to grant partial summary judgment on the causes of action for which there is no
18  triable issue. Specifically, through this instant motion, Defendants move for summary
19  judgment on the following grounds, and pursuant to Federal Rules of Civil Procedure,
20  Rule 56:

21      *1.*    *The uncontroverted facts demonstrate that Officer Archuleta's use of*
22  *force was objectively reasonable under the facts and circumstances confronting him,*
23  *and accordingly, Officer Archuleta is entitled to judgment in his favor as a matter of*
24  *law on Plaintiff's first, second, and third causes of action;*
25      *2.*    *The uncontroverted facts demonstrate that Officer Archuleta is entitled*
26  *to qualified immunity for the alleged constitutional violations set forth in Plaintiff's*
27  *first cause of action because Officer Archuleta's use of force was objectively*
28

2

**NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**

1  *reasonable;*

2       *3.    The uncontroverted facts demonstrate that Officer Archuleta is entitled*

3  *to qualified immunity for the alleged constitutional violations set forth in Plaintiff's*

4  *first cause of action because, even if Plaintiff's constitutional rights were violated,*

5  *the rights were not clearly established at the time of the incident;*

6       *4.    The uncontroverted facts demonstrate that Officer Archuleta is entitled*

7  *to judgment as a matter of law on the Plaintiff's negligence claim set forth in the third*

8  *cause of action because Officer Archuleta's pre-shooting tactical conduct did not fall*

9  *below any applicable standard of care;*

10       *5.    The uncontroverted facts demonstrate that Officer Archuleta is entitled*

11  *to judgment as a matter of law on the Plaintiff's negligence claim set forth in the third*

12  *cause of action because Plaintiff cannot prove a proximate causal link between the*

13  *alleged pre-shooting tactical conduct and Officer Archuleta's decision to use deadly*

14  *force;*

15       *6.    The uncontroverted facts demonstrate that City is entitled to judgment*

16  *as a matter of law on Plaintiff's state law claims, set forth in Plaintiff's second and*

17  *third causes of action, because City has no direct liability and Plaintiff cannot hold*

18  *City vicariously liable as Officer Archuleta's use of force was objectively reasonable*

19  *under the circumstances and Officer Archuleta's pre-shooting tactical conduct did*

20  *not cause Plaintiff's harm;*

21      This motion is made pursuant to <u>Federal Rules of Civil Procedure</u>, Rule 56, and

22  is based upon this Notice, the Statement of Uncontroverted Material Facts, supporting

23  evidence and Conclusions of Law, Request for Judicial Notice, served and filed

24  concurrently herewith, and upon all of the papers on file in this matter, and upon such

25  oral or documentary evidence that may be presented at the hearing of the motion, if

26  any.

27  ///

28

OFFICE OF THE CITY ATTORNEY<br>CHARLES PARKIN, City Attorney<br>333 West Ocean Boulevard, 11th Floor<br>Lone Beach. CA 90802-4664

3

**NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**

1   ///

2   ///

3       This Motion was made following the conference of parties pursuant to Local

4   Rule 7-3 on July 8, 2019.

5

6   DATED: July 22, 2019

7                               CHARLES PARKIN, City Attorney

8

9                           By:    */s/ Matthew M. Peters*

10                                MATTHEW M. PETERS

                               Deputy City Attorney

11                Attorneys for Defendants

12                CITY OF LONG BEACH and FERNANDO
               ARCHULETA

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

OFFICE OF THE CITY ATTORNEY
CHARLES PARKIN, City Attorney
333 West Ocean Boulevard, 11th Floor
Long Beach, CA 90802-4664

**NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OR, IN THE
ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**

# **TABLE OF CONTENTS**

**MEMORANDUM OF POINTS AND AUTHORITIES**........................................... 1

**I.   INTRODUCTION AND RELIEF SOUGHT**................................................. 1

**II.  STATEMENT OF UNCONTROVERTED FACTS** .......................................... 3

**III. LEGAL STANDARD FOR GRANTING SUMMARY JUDGMENT** .......... 7

**IV. DEFENDANT FERNANDO ARCHULETA IS ENTITLED TO
QUALIFIED IMMUNITY ON PLAINTIFF'S 42 U.S.C. § 1983 CLAIM**.......... 8

   A. There was No Violation of Plaintiff's Fourth Amendment Rights ................ 8

      1. The Uncontroverted Facts Show that there was Reasonable Suspicion to
Contact, Stop, and – if Needed – Detain Plaintiff.............................................. 9

      2. The Uncontroverted Facts Show that there was Probable Cause to Arrest
Plaintiff.............................................................................................. 10

      3. The Uncontroverted Facts Show that the Force Used by Officer Archuleta
was Objectively Reasonable ................................................................ 12

   B. Even if there was a Violation of Plaintiff's Fourth Amendment Rights, No
Clearly Established Law Existed at the Time of the Incident that would have put
Officer Archuleta on Notice that his Use of Force was Unconstitutional ........... 17

**V.  PLAINTIFF'S STATE LAW CLAIMS FAIL AS A MATTER OF LAW**..21

   A. Plaintiff's Assault and Battery Claims Must Fail as a Matter of Law Because
Officer Archuleta's Use of Deadly Force was Objectively Reasonable Under the
Circumstances ................................................................................... 21

   B. Officer Archuleta was Not Negligent........................................................ 22

      1.There was Reasonable Suspicion to Detain Plaintiff and Probable Cause to
Arrest Plaintiff.................................................................................... 22

      2. Officer Archuleta's Tactical Conduct did Not Breach a Duty of
Reasonable Care ................................................................................. 23

**VI. THE CITY IS ENTITLED TO JUDGMENT AS A MATTER OF LAW ON
PLAINTIFF'S STATE CAUSES OF ACTION** ................................................ 25

   A. The City has No Direct Liability ............................................................ 25

   B. Plaintiff Cannot Hold the City Vicariously Liable....................................... 25

**VI. CONCLUSION** ........................................................................... 26

OFFICE OF THE CITY ATTORNEY
CHARLES PARKIN, City Attorney
333 West Ocean Boulevard, 11th Floor
Long Beach, CA 90802-4664

i

## FEDERAL CASES

*Anderson v. Creighton*, 483 U.S. 635, 639 (1987) ............................................ 18

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ..................................... 7

*Ashcroft v. al-Kidd,* 563 U.S. 731, 741 (2011) ................................................ 18

*Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986) ........................................ 8

*Cmty. House, Inc. v. City of Boise*, 623 F.3d 945, 967 (9th Cir. 2010) ............ 17

*Devenpeck v. Alford*, 543 U.S. 146, 153-55 (2004) ......................................... 23

*District of Columbia v. Wesby*, 138 S.Ct. 577, 591 (2018) ............................. 18

*Drummond v. City of Anaheim*, 343 F.3d 1052, 1058 (9th Cir. 2003) ............. 17

*Florida v. Royer*, 460 U.S. 491, 498 (1983) ..................................................... 9

*Glenn v. Washington County*, 673 F.3d 864, 872 (9th Cir. 2011) .................... 16

*Gonzalez v. City of Antioch*, 697 Fed.Appx. 900, 901-902 (9th Cir. 2017) ...... 24

*Graham v. Connor*, 490 U.S. 386, 395 (1989) ................................................ 12

*Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982) .............................................. 8

*Illinois v. Wardlow*, 528 U.S. 119, 123 (2000) ................................................ 9

*Kisela v. Hughes*, 138 S.Ct. 1148, 1153 (2018) ............................................. 18

*Lal v. California*, 746 F.3d 1112, 1116 (9th Cir. 2014) .................................... 8

*Lowry v. City of San Diego*, 858 F.3d 1248, 1256 (9th Cir. 2017) ................... 12

*Maryland v. Pringle*, 540 U.S. 366, 371 (2003) .............................................. 11

*Mattos v. Agaranos*, 661 F.3d 433 (9th Cir. 2011) ......................................... 8

*Monell v. Dept. of Social Services*, 436 U.S. 658 (1978) ............................... 4

*Miller v. Clark Cnty.*, 340 F.3d 959, 964 (9th Cir. 2003) ................................ 13

*Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) ................................................ 18

OFFICE OF THE CITY ATTORNEY
CHARLES PARKIN, City Attorney
333 West Ocean Boulevard, 11th Floor
Long Beach, CA 90802-4664

ii

**NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**

*Mulligan v. Nichols* 835 F.3d 983, 991-992 (9th Cir. 2016) ...........................28

*Pearson v. Callahan*, 555 U.S. 223, 231 (2009) ...........................................9

*Plumhoff v. Rickard*, 572 U.S. 765, 774 (2014)........................................... 9

*S.B. v. Cnty. of San Diego*, 864 F.3d 1010, 1015 (9th Cir. 2017)............................. 18

*Saucier v. Katz*, 533 U.S. 194, 200-201 (2001) ........................................... 8

*Slater v. Deasey*, 2019 WL 255236 (9th Cir. 2019) ....................................... 18

*Tennessee v. Garner*, 471 U.S. 1, 11 (1985)........................................... 12

*Terry v. Ohio*, 392 U.S. 1, 9 (1968) .................................................... 9

*Thorsted v. Kelly*, 858 F.2d 571, 575 (9th Cir. 1988.)..................................... 8

*Torres v. City of Madera*, 648 F.3d 1119 (9th Cir. 2011) ................................. 8

*United States v. Smith*, 790 F.2d 789, 792 (9th Cir. 1986) ............................... 11

*United States v. Valdes-Vega*, 738 F.3d 1074, 1078 (9th Cir. 2013)............................ 9

*White v. Pauley*, 137 S.Ct. 548, 551 (2017)............................................ 18

*Wilkinson v. Torres*, 610 F.3d 546, 551 (2010) ......................................... 12

## STATE CASES

*Brown v. Ransweiler*, 171 Cal.App.4th 516, 527 (2009)...............................23

*Davidson v. City of Westminster* (1982) 32 Cal.3d 197.............................. 25

*Eastburn v. Regional Fire Protection Authority* (2003) 31 Cal.4th 1175, 1183 ...... 25

*Edson v. City of Anaheim*, 63 Cal.App.4th 1269, 1274-1275 (1998) ........................ 21

*Hayes v. Co. of San Diego*, 57 Cal.4th 622, 632 (2013)............................... 22

*Munoz v. City of Union City*, 120 Cal.App.4th 1077, 1099 (2014) ......................... 22

## STATUTES

Fed. Rules of Civ. Procedure Rule 56(a).............................................7

*Cal. Pen. Code* § 187(a) ..............................................................13

OFFICE OF THE CITY ATTORNEY
CHARLES PARKIN, City Attorney
333 West Ocean Boulevard, 11th Floor
Long Beach, CA 90802-4664

iii

**NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**

*Cal. Pen. Code § 245(d)(1)* .................................................................... 13

*Cal. Pen. Code § 69(a)* .......................................................................... 13

*Business and Professions Code § 25620(a)* .......................................... 4

*California Penal Code § 148(a)(1)* ........................................... 4, 11,13, 23

*Cal. Gov. Code § 815* ...................................................................... .....25

*Long Beach Municipal Code § 9.22.010* ................................................ 10

U.S. Const. Amend. IV ........................................................................... 9

*California Penal Code § 835a* ........................................................ ...21

*California Penal Code § 664* ........................................................... .13

OFFICE OF THE CITY ATTORNEY
CHARLES PARKIN, City Attorney
333 West Ocean Boulevard, 11th Floor
Long Beach, CA 90802-4664

iv

**NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OR, IN THE
ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION AND RELIEF SOUGHT

On the evening of July 22, 2017, Long Beach Police Department ("LBPD") police officers Fernando Archuleta ("Officer Archuleta") and Leticia Newton ("Officer Newton") responded to 2130 W. Spring Street ("subject location") regarding a disturbance call. The calling party complained that a group of approximately 20 Black males were loitering on and around his vehicle.

Officers Archuleta and Newton immediately recognized the subject location they were called to respond to, as it was a known high-crime area and claimed "territory" of the West Coast Crips' gang. Officer Archuleta had personally been involved in several gang-related criminal investigations at the subject location.

When the officers arrived at the subject location, they immediately identified a group of males that matched the description given by the calling party and Officer Archuleta recognized several known gang members. The officers identified an open container of alcohol on the calling party's vehicle and decided to investigate. Specifically, the officers decided to contact Plaintiff Ronald Clark ("Plaintiff"), who was the only individual that remained near the open container of alcohol.

Officer Archuleta requested Plaintiff to approach the police vehicle to investigate the potential open container violation and Plaintiff was warned not to flee. However, instead of following the officers' commands, Plaintiff started running. Plaintiff was given commands to stop running, which he ignored, and a foot pursuit ensued.

As Officer Archuleta gave chase, Plaintiff continued reaching into his waistband area, despite multiple orders not to. When Plaintiff reached a dead end, he came face to face with Officer Archuleta who threatened deadly force if Plaintiff did not comply with his commands. Remaining defiant, Plaintiff attempted to gain entry into a nearby vehicle and refused to put his hands in the air. In Officer Archuleta's mind, it soon became apparent that Plaintiff would do anything he could to evade

OFFICE OF THE CITY ATTORNEY
CHARLES PARKIN, City Attorney
333 West Ocean Boulevard, 11th Floor
Lone Beach, CA 90802-4664

1

1   arrest. As Officer Archuleta was no more than 10 yards away from Plaintiff, Plaintiff
2   reached towards his waistband, at which time Officer Archuleta fired one shot at him.
3        Plaintiff filed this instant action against Officer Archuleta and the City of Long
4   Beach ("City") (collectively "Defendants"). Plaintiff asserts one federal cause of
5   action against Officer Archuleta, individually, for excessive force in violation of the
6   Fourth Amendment (42 U.S.C. § 1983), as well as causes of action against both
7   defendants under state law for assault, battery, and negligence. The operative
8   Complaint does not appear to raise allegations against the City for municipal liability
9   under *Monell v. Dept. of Social Services*, 436 U.S. 658 (1978).

10       As Officer Archuleta's use of force was objectively reasonable under the
11  totality of circumstances, there can be no liability under Plaintiff's Fourth
12  Amendment, assault, battery, and negligence claims. Even if there exists a triable
13  issue of fact as to the reasonableness of Officer Archuleta's use of force, the
14  uncontroverted facts demonstrate that Officer Archuleta is entitled to qualified
15  immunity on Plaintiff's Fourth Amendment claim because the alleged constitutional
16  violation was not clearly established at the time of the incident. Furthermore,
17  Plaintiff's negligence claim against Officer Archuleta must fail as a matter of law
18  because Officer Archuleta's did not breach any duty owed to Plaintiff by utilizing the
19  pre-shooting tactics he employed on the night of the incident. Even if there is a triable
20  issue as to the reasonableness of Officer Archuleta's pre-shooting tactics, Plaintiff
21  cannot prove a proximate causal link between the alleged pre-shooting tactics and
22  Officer Archuleta's use of deadly force. Lastly, City is entitled to judgment as a matter
23  of law because it owed no duty to Plaintiff and, since Officer Archuleta bears no
24  liability, it cannot be held vicariously liable for Officer Archuleta's actions.

25       Accordingly, Defendants respectfully request that the court grant summary
26  judgment in their favor, or, in the alternative, partial summary judgment on the causes
27  of action for which no genuine issue of material fact exists.

28

OFFICE OF THE CITY ATTORNEY
CHARLES PARKIN, City Attorney
333 West Ocean Boulevard, 11th Floor
Lone Beach, CA 90802-4664

2

**NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**

## II.   STATEMENT OF UNCONTROVERTED FACTS

On July 22, 2017, at approximately 8:20 p.m., Defendant Police Officer Fernando Archuleta ("Officer Archuleta") and his partner, Police Officer Leticia Newton ("Officer Newton") (collectively "Officers"), responded to 2130 W. Spring Street regarding a group disturbance call. [Uncontroverted Material Fact ("UMF") 1]. While en route, the Officers were advised that there were approximately 20 Black males between the ages of teens to mid-20's sitting on the calling party's vehicle. [UMF 2]

The area of 2130 W. Spring Street is a high-crime area situated directly adjacent to the Springdale West Apartments, which was known by both Officers to house a large majority of West Coast Crip gang members. [UMF 3]. Officer Archuleta knew that the West Coast Crip gang members claim the Springdale West Apartments as their "turf" and control most of the criminal activity that takes place within the apartments as well as the surrounding area. [UMF 4]. Officer Archuleta knew that West Coast Crip gang members often congregate in the area of 2130 W. Spring Street, near the entrance to the Springdale West Apartments. [UMF 5]. In fact, prior to the day of the incident, Officer Archuleta had personally investigated multiple crimes involving West Coast Crip gang members near the Springdale West Apartments and its surrounding area: these investigations included arresting West Coast Crip gang members and associates for possessing firearms and hiding firearms in the bushes directly outside of the Springdale West Apartments. [UMF 6]. Moreover, shortly before the day of the incident, the Officers received a briefing from the Long Beach Police Department ("LBPD" or "Department") regarding West Coast Crip gang members threatening to shoot police officers in and around the Springdale West Apartments. [UMF 7].

Upon arriving at 2130 Spring Street, the Officers observed a group of approximately 20 Black males, between the ages of teens to mid-20's, standing on the north sidewalk of Spring Street, near an entrance to the Springdale West Apartments.

OFFICE OF THE CITY ATTORNEY
CHARLES PARKIN, City Attorney
333 West Ocean Boulevard, 11th Floor
Lone Beach, CA 90802-4664

3

OFFICE OF THE CITY ATTORNEY
CHARLES PARKIN, City Attorney
333 West Ocean Boulevard, 11th Floor
Lone Beach, CA 90802-4664

1 [UMF 8]. Officer Archuleta recognized several members of the group as being West

2 Coast Gang members and observed Plaintiff Ronald Clark ("Plaintiff") conversing

3 with them. [UMF 9]. The Officers observed an open container of Patron tequila on a

4 vehicle near the group, in violation of *Business and Professions Code* § 25620(a), and

5 decided to investigate as they had reason to believe crimes were afoot.[1] [UMF 10].

6    As the police vehicle came to a stop, the Officers observed the group of

7 individuals look towards them and begin to walk eastbound on the north sidewalk of

8 Spring Street, while Plaintiff[2] remained near the open container of alcohol and took a

9 few backwards (westbound). [UMF 11]. Based on his training and experience, Officer

10 Archuleta knew that when an individual travels in the opposite direction of his group,

11 that individual will likely attempt to flee. [UMF 12]. Due to Plaintiff standing next to

12 the open container of alcohol and him moving in the opposite direction of the group,

13 the Officers decided to contact Plaintiff to investigate the possible *Business and*

14 *Professions'* code violation. [UMF 13].

15    Officer Archuleta then activated his vehicle's spotlight, pointed the light

16 directly at Plaintiff, exited his vehicle, and ordered Plaintiff to walk to the patrol

17 vehicle's hood. [UMF 14]. Plaintiff began to hop back and forth, at which time Officer

18 Newton removed her taser device and warned Plaintiff that he would be tasered if he

19 ran. [UMF 15]. Plaintiff ignored the Officers' commands and warnings and began

20 running westbound on the north sidewalk of Spring Street: at this time, the Officers

21 now had reason to believe that Plaintiff was in violation of *California Penal Code* §

22 148(a)(1).[3] [UMF 16]. Officer Archuleta immediately ordered Plaintiff to "Stop

---

[1] *Business and Professions Code* § 25620(a) states, in relevant part, that "[a]ny person possessing any can, bottle, or other receptacle containing any alcoholic beverage that has been opened… in any city… shall be guilty of an infraction if the city… has enacted an ordinance that prohibits the possession of those containers in those areas or the consumption of alcoholic beverages in those areas. *Long Beach Municipal Code* § 9.22.010 [Public Consumption-Prohibited] states that "[n]o person shall transport or drink or consume any alcoholic beverage in any public place except upon premises licensed under an on-sale or on-sale general license under the State Alcoholic Beverage Control Act."

[2] Officer Archuleta observed Plaintiff to be wearing a baggy blue jeans and a black t-shirt that hung over his waist, concealing his front waistband.

[3] *California Penal Code* § 148(a)(1) states that, "[e]very person who willfully resists, delays, or obstructs any public

4

running!"; however, Plaintiff ignored Officer Archuleta's order and continued running westbound. [UMF 17]. Thereafter, the Officers began to pursue Plaintiff on foot: Officer Newton ran westbound on the north sidewalk of Spring Street and Officer Archuleta ran westbound in the street, behind and paralleling Plaintiff. [UMF 18].

As the Officers pursued Plaintiff, Officer Archuleta saw Plaintiff reaching into his front waistband area. [UMF 19]. Based on his training and experience, Officer Archuleta knew that individuals conceal firearms in the waistband of their pants. [UMF 20]. Due to Officer Archuleta's knowledge of the area and Plaintiff's actions, Officer Archuleta un-holstered his firearm for potential self-defense and ordered Plaintiff to stop reaching for his waistband by shouting, "Stop reaching in your waistband!" [UMF 21]. Plaintiff ignored Officer Archuleta's commands, and continued running and reaching into his waistband area. [UMF 22]. Officer Archuleta observed small items falling from Plaintiff's waistband area. [UMF 23]. Officer Archuleta then issued Plaintiff another command and warning, by shouting, "Stop reaching into your waistband or you will be shot!" [UMF 24].

Plaintiff continued running and reached the northwest corner of the cult-de-sac where he became cornered in by the concrete wall of the Springdale West Apartments to his north, the train track's south barrier wall to his west, and single-story residences to his south. [UMF 25]. Officer Archuleta then ran to the middle of Spring Street when he saw Plaintiff begin to run south along the train track south barrier wall. [UMF 26]. Officer Newton, who was trailing behind Officer Archuleta, also noticed that Plaintiff had reached a dead end, at which time she ran southbound across Spring Street behind Officer Archuleta to cut Plaintiff off if he were to backtrack eastbound on the south sidewalk. [UMF 27]. As he ran southbound along the train track barrier

OFFICE OF THE CITY ATTORNEY
CHARLES PARKIN, City Attorney
333 West Ocean Boulevard, 11th Floor
Long Beach, CA 90802-4664

---

officer, peace officer, or an emergency medical technician, as defined in Division 2.5 (commencing with Section 1797) of the Health and Safety Code, in the discharge or attempt to discharge any duty of his or her office or employment, when no other punishment is prescribed, shall be punished by a fine not exceeding one thousand dollars ($1,000), or by imprisonment in a county jail not to exceed one year, or by both that fine and imprisonment."

5

**NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**

1  wall, Plaintiff continued reaching into his front waistband area. [UMF 28]. Officer

2  Archuleta feared Plaintiff was attempting to retrieve a firearm and – again – warned

3  Plaintiff that he would be shot if he did not stop reaching into his waistband. [UMF

4  29].

5       Plaintiff began turning to his left (eastbound) and faced Officer Archuleta, at

6  which time Plaintiff's only avenue of escape was eastbound on Spring Street past the

7  Officers. [UMF 30]. Based on Plaintiff's actions and based on Officer Archuleta's

8  training and experience, Officer Archuleta believed that Plaintiff was still trying to

9  gain access to a firearm to facilitate his escape by shooting at Officer Archuleta. [UMF

10  31]. Officer Archuleta now believed Plaintiff posed an immediate threat to his life,

11  Officer Newton's life, and the lives of innocent bystanders. [UMF 32].

12       Officer Archuleta began to raise his firearm towards Plaintiff when he noticed

13  a parked Toyota Camry, with a female sitting in the driver's seat, coming into his field

14  of fire. [UMF 33]. The Toyota Camry was parked in the middle of Spring Street at

15  the dead end of the cul-de-sac, facing eastbound. [UMF 34]. At this time, the Officers

16  were unaware that Plaintiff knew the occupant[4] of the Toyota Camry. [UMF 35].

17       Plaintiff then walked eastbound along the passenger side of the Camry towards

18  Officer Archuleta, at which time the Officers feared that Plaintiff may be attempting

19  to carjack the Toyota or take the occupant hostage to escape arrest. [UMF 36].

20  Plaintiff then appeared to make an attempt to enter into the vehicle through the front

21  passenger door but was unsuccessful. [UMF 37]. While at the Camry's front

22  passenger door, with Officer Archuleta firearm pointing directly at him, Plaintiff

23  reached for the door handle and stated, angrily, "I'm going home", to which Officer

24  Archuleta replied, "No." [UMF 38]. Plaintiff was instructed to keep his hands up, yet

25  refused to comply. [UMF 39].

26       Suddenly, Plaintiff stopped reaching for the front passenger door handle and

27

28  [4] The occupant of the Toyota Camry was later discovered to be Plaintiff's girlfriend, Amber Beaudet.

OFFICE OF THE CITY ATTORNEY
CHARLES PARKIN, City Attorney
333 West Ocean Boulevard, 11th Floor
Long Beach, CA 90802-4664

6

**NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OR, IN THE
ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**

stepped back (west) approximately two feet, which put him approximately 10 yards west of Officer Archuleta. [UMF 40]. At this point, Plaintiff had warned that he would be shot if he reached for his waistband and was instructed to keep his hands up two to three times, but Plaintiff ignored these commands and refused to put his hands up. [UMF 41]. As Plaintiff's open right hand came towards his waistband, Officer Newton arrived at Officer Archuleta's location and deployed her taser device at Plaintiff's abdomen area. [UMF 42].

Within seconds of Officer Newton deploying her taser, Officer Archuleta saw Plaintiff's open right hand remain on the right side of his front waistband. [UMF 43]. Based on Plaintiff's right arm movement, his failure to comply with multiple orders to not reach for his waistband, Officer Archuleta's past training and experience at this location, and the fact that Officer Archuleta could not conceive of any reason Plaintiff would be reaching for his waistband other than to retrieve a firearm, Officer Archuleta believed that Plaintiff was attempting to retrieve a firearm to shoot him, Officer Newton, or other bystanders. [UMF 44]. Fearing for his own life and for the lives of others, Officer Archuleta used his duty weapon to fire one shot at Plaintiff. [UMF 45]. It is worth nothing that Plaintiff himself admitted that Officer Archuleta likely fired his weapon because it appeared that Plaintiff may have been reaching for a firearm and that Officer Archuleta believed his life was in jeopardy [UMF 46].

Immediately thereafter, Officer Archuleta advised dispatch that there has been an officer involved shooting and that the suspect needed medical attention. [UMF 47].

## III.   LEGAL STANDARD FOR GRANTING SUMMARY JUDGMENT

A district court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact, and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual issue is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Once the moving party has made this threshold showing, the burden shifts to the opposing party to

OFFICE OF THE CITY ATTORNEY
CHARLES PARKIN, City Attorney
333 West Ocean Boulevard, 11th Floor
Long Beach, CA 90802-4664

7

1 | designate specific facts showing that there is a genuine issue for trial. *Celotex Corp.*
2 | *v. Catrett,* 477 U.S. 317, 323 (1986).

3 | **IV.   DEFENDANT FERNANDO ARCHULETA IS ENTITLED TO**
4 | **QUALIFIED IMMUNITY ON PLAINTIFF'S 42 U.S.C. § 1983 CLAIM**

5 | The qualified immunity doctrine protects peace officers "from liability for civil
6 | damages insofar as their conduct does not violate clearly established statutory or
7 | constitutional rights of which a reasonable person would have known." *Harlow v.*
8 | *Fitzgerald,* 457 U.S. 800, 818 (1982). In such a case, peace officers are entitled "'not
9 | to stand trial or face the other burdens of litigation.'" *Saucier v. Katz*, 533 U.S. 194,
10 | 200-201 (2001). Qualified immunity gives peace officers breathing room to make
11 | reasonable but mistaken judgments about open legal questions; and, when properly
12 | applied, it protects all but the plainly incompetent or those who knowingly violate the
13 | law. *Rodriguez v. County of Los Angeles*, 891 F.3d 776 (9th Cir. 2018). The protection
14 | of qualified immunity applies regardless of whether the peace officer's error is a
15 | "mistake of law, a mistake of fact, or a mistake based on mixed questions of law and
16 | fact." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).

17 | A peace officer may be denied qualified immunity at summary judgment in a
18 | Section 1983 case "only if (1) the facts alleged, taken in the light most favorable to
19 | the party asserting injury, show that the officer's conduct violated a constitutional
20 | right, and (2) the right at issue was clearly established at the time of the incident such
21 | that a reasonable officer would have understood [his] conduct to be unlawful in that
22 | situation." *Torres v. City of Madera*, 648 F.3d 1119, 1123 (9th Cir. 2011). The burden
23 | is on the plaintiff to prove both of these elements. *Mattos v. Agaranos*, 661 F.3d 433
24 | (9th Cir. 2011).

25 | **A.   There was No Violation of Plaintiff's Fourth Amendment Rights**
26 | In determining whether an officer is entitled to qualified immunity, the court
27 | may first consider whether there has been a violation of a constitutional right. *Lal v.*
28 | *California*, 746 F.3d 1112, 1116 (9th Cir. 2014). In addressing this first prong of the

OFFICE OF THE CITY ATTORNEY
CHARLES PARKIN, City Attorney
333 West Ocean Boulevard, 11th Floor
Long Beach, CA 90802-4664

8

OFFICE OF THE CITY ATTORNEY
CHARLES PARKIN, City Attorney
333 West Ocean Boulevard, 11th Floor
Long Beach, CA 90802-4664

1   qualified immunity analysis, a court should engage in a careful examination of the

2   "totality of the circumstances" analysis conducted from the perspective of a

3   reasonable officer. *Plumhoff v. Rickard*, 572 U.S. 765, 774 (2014). The analysis is

4   accordingly quite deferential to the officer. *Saucier*, 533 U.S. at 205. As set forth

5   below, Officer Archuleta's conduct did not violate Plaintiff's constitutional rights.

6       **1.**    **The Uncontroverted Facts Show that there was Reasonable**

7           **Suspicion to Contact, Stop, and – if Needed – Detain Plaintiff**

8       Plaintiff appears to argue that Officer Archuleta's use of force was excessive,

9   in part, because Officer Archuleta unjustifiably stopped and detained Plaintiff without

10  reasonable suspicion or probable cause. (Compl. ¶¶ 10, 30, 40). As discussed below,

11  the Officers had reasonable suspicion to detain Plaintiff on the night of July 22, 2017.

12      The Fourth Amendment states, "[t]he right of the people to be secure in their

13  persons, houses, papers, and effects against unreasonable searches and seizures, shall

14  not be violated". U.S. Const. amend. IV. "The Fourth Amendment prohibits

15  'unreasonable searches and seizures' by the Government, and its protections extend

16  to brief investigatory stops of persons...that fall short of traditional arrest." *Terry v.*

17  *Ohio*, 392 U.S. 1, 9 (1968).

18      Under *Terry v. Ohio*, police officers are entitled to detain individuals to conduct

19  brief investigatory stops if, under the totality of the circumstances, they have

20  reasonable suspicion that a person has committed or is about to commit a

21  crime. *Florida v. Royer,* 460 U.S. 491, 498 (1983) (plurality opinion); *United States*

22  *v. Valdes-Vega*, 738 F.3d 1074, 1078 (9th Cir. 2013) (Reasonable suspicion is further

23  defined as "a particularized and objective basis for suspecting the particular person

24  stopped of criminal activity"). Reasonable suspicion "is a less demanding standard

25  than probable cause," and merely requires "a minimal level of objective

26  justification." *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000).

27      In the case at bar, there was reasonable suspicion justifying the Officers'

28  decision to contact, stop, and detain Plaintiff. The uncontroverted facts show that prior

9

to the officers' arrival at the subject location, the Officers were advised that there was a group of individuals possibly engaging in criminal activity at the subject location. [UMFs 1, 2]. The uncontroverted facts show unequivocally that, prior to arriving on scene, Officer Archuleta had independent knowledge of the subject location being in a known gang territory and high crime area. [UMFs 3-7].

When the Officers arrived on scene, Officer Archuleta saw Plaintiff conversing with known gang members and standing next to a vehicle with an open container of Patron Tequila on its trunk.[5] [UMFs 9-11]. The Officers observed the group disperse in one direction while Plaintiff took a few steps in the opposite direction and remained near the open container of alcohol. [UMF 11]. Plaintiff's actions and behavior suggested to the Officers that Plaintiff was preparing to flee. [UMFs 12-13]. Accordingly, due to Plaintiff's spatial relationship to the open container of alcohol and due to Plaintiff's actions and demeanor, the Officers reasonably suspected that criminal activity is, or was, occurring and that Plaintiff was connected to that criminal activity. [UMF 13]. As such, under the totality of the circumstances, at the time Officer Archuleta decided to stop and/or detain Plaintiff, Officer Archuleta had a particularized and objective basis for suspecting that Plaintiff was involved with the unlawful possession of an open container of alcohol. Thus, there was reasonable suspicion for Officer Archuleta to contact, stop, and – if required – detain Plaintiff.

## 2. The Uncontroverted Facts Show that there was Probable Cause to Arrest Plaintiff

Contrary to Plaintiff's contentions, there was probable cause to arrest Plaintiff when he fled from a lawful detention. Probable cause exists when "under the totality of circumstances known to the arresting officers, a prudent person would have

[5] Business and Professions Code § 25620(a) states, in relevant part, that "[a]ny person possessing any can, bottle, or other receptacle containing any alcoholic beverage that has been opened...in any city...shall be guilty of an infraction if the city...has enacted an ordinance that prohibits the possession of those containers in those areas or the consumption of alcoholic beverages in those areas. Long Beach Municipal Code § 9.22.010 [Public Consumption-Prohibited] states that "[n]o person shall transport or drink or consume any alcoholic beverage in any public place except upon premises licensed under an on-sale or on-sale general license under the State Alcoholic Beverage Control Act."

OFFICE OF THE CITY ATTORNEY
CHARLES PARKIN, City Attorney
333 West Ocean Boulevard, 11th Floor
Long Beach, CA 90802-4664

10

1   concluded that there was a fair probability that [the suspect] had committed a crime."

2   *United States v. Smith*, 790 F.2d 789, 792 (9th Cir. 1986); *see also Maryland v.*

3   *Pringle*, 540 U.S. 366, 371 (2003) (examining "the events leading up to the arrest"

4   and whether the "historical facts, viewed from the standpoint of an objectively

5   reasonable police officer, amount to probable cause") (citations omitted).

6        No reasonable factfinder could find that Officer Archuleta did not have

7   probable cause to arrest Plaintiff. Once there was reasonable suspicion to detain

8   Plaintiff (Sec. IV(A)(1), *supra*), Officer Archuleta ordered Plaintiff to the police

9   vehicle. [UMF 14]. Plaintiff did not comply with the officers' orders, but instead

10  showed signs that he was preparing to flee. [UMF 15]. When the Officers warned

11  against Plaintiff running, Plaintiff turned around and fled on foot. [UMF 16]. When

12  Officer Archuleta ordered Plaintiff to stop running, Plaintiff ignored this command as

13  well. [UMF 17]. Once Plaintiff blatantly refused to comply with the Officers' orders

14  and his decided to run from a lawful detention, there was probable cause to arrest

15  Plaintiff for violating *California Penal Code* § 148(a)(1).[6] As Plaintiff fled on foot,

16  Plaintiff repeatedly reached into and/or around his waistband. [UMF 19]. Plaintiff

17  continued to reach into his waistband after repeated commands and warnings not to

18  do so. [UMFs 21-22, 24, 28]. Based on Plaintiff's refusal to adhere to the Officers'

19  lawful commands and his fleeing from a lawful detention, there was, undoubtedly,

20  probable cause to arrest Plaintiff for violating *California Penal Code* § 148(a)(1).

21       Alternatively, if the Court determines that Officer Archuleta did not have

22  probable cause to arrest Plaintiff, it is evident that reasonable officers could have

23  believed that arrest was proper from the undisputed facts, and so Officer Archuleta

24  would be entitled to qualified immunity on this ground. *Pearson*, 555 U.S. at 223.

25

26  _____

[6]"Every person who willfully resists, delays, or obstructs any public officer, peace officer, or an emergency medical
27  technician, as defined in Division 2.5 (commencing with Section 1797) of the Health and Safety Code, in the discharge
    or attempt to discharge any duty of his or her office or employment, when no other punishment is prescribed, shall be
    punished by a fine not exceeding one thousand dollars ($1,000), or by imprisonment in a county jail not to exceed one
28  year, or by both that fine and imprisonment." *Cal. Pen. Code* § 148(a)(1).

OFFICE OF THE CITY ATTORNEY
CHARLES PARKIN, City Attorney
333 West Ocean Boulevard, 11th Floor
Lone Beach, CA 90802-4664

11

**NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OR, IN THE
ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**

*i.*

### 3.   <u>The Uncontroverted Facts Show that the Force Used by Officer Archuleta was Objectively Reasonable</u>

The use of deadly force is a seizure subject to the Fourth Amendment reasonableness requirement. *Graham v. Connor*, 490 U.S. 386, 395 (1989). A Fourth Amendment claim of excessive force is analyzed under the framework set forth by the Supreme Court in *Graham v. Connor*, *supra*.

"Whether the use of deadly force is reasonable is highly fact-specific…but the inquiry is an objective one." *Graham*, 490 U.S. at 397. Case law is clear that an officer may not use deadly force to apprehend a suspect where the suspect poses no immediate threat to the officer or others. *Tennessee v. Garner*, 471 U.S. 1, 11 (1985). However, "it is not constitutionally unreasonable to prevent escape using deadly force '[w]here the officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others." *Id.* at 11. "A reasonable use of deadly force encompasses a range of conduct, and the availability of a less-intrusive alternative will not render conduct unreasonable." *Wilkinson v. Torres*, 610 F.3d 546, 551 (2010). The inquiry must be viewed "from the perspective of a reasonable officer on scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396. Each case is handled on a case-by-case analysis. *Lowry v. City of San Diego*, 858 F.3d 1248, 1256 (9th Cir. 2017) (citations omitted). A court determines the reasonableness of the force employed by police officers by balancing "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Graham*, 490 U.S. at 396 (internal quotations omitted).

### a.   <u>*Nature and Quality of the Intrusion*</u>

The first step of the excessive force inquiry requires the court to "assess the severity of the intrusion on the individual's Fourth Amendment rights by evaluating 'the type and amount of force inflicted.'" *Miller v. Clark Cnty.*, 340 F.3d 959, 964 (9th

OFFICE OF THE CITY ATTORNEY
CHARLES PARKIN, City Attorney
333 West Ocean Boulevard, 11th Floor
Long Beach, CA 90802-4664

12

Cir. 2003). Here, Officer Archuleta used deadly force when he fired one shot at Plaintiff.

### b.   *Governmental Interest in Force Used*

The strength of the government's interest in the force used is evaluated by examining three primary factors: (1) whether the suspect poses an immediate threat to the safety of the officers or others, (2) the severity of the crime at issue, and (3) whether the suspect is actively resisting arrest or attempting to evade arrest by flight. *Graham*, 490 U.S. at 396. These factors, however, are not exclusive. *See Bryan v. MacPherson*, 630 F.3d 805, 826 (9th Cir.2010). Courts "examine the totality of the circumstances and consider 'whatever specific factors may be appropriate in a particular case, whether or not listed in *Graham*.'" *Id.* As set forth below, each of the *Graham* factors weigh in favor of Defendants.

### ii.   *Severity of the Crime at Issue*

The first *Graham* factor, the severity of crime at issue, weighs in Officer Archuleta's favor. Initially, Plaintiff's crime was relatively minor as he was suspected of having an open container of alcohol in violation of *Business and Profession Code* § 25620(a). [UMFs 10, 13]. However, the severity of Plaintiff's crimes quickly increased once Plaintiff decided to flee from the detention and refused to obey lawful commands given to him by the Officers. [UMFs 16, 21-22, 24, 28]. At that point, Plaintiff was likely in violation of *California Penal Code* § 148(a)(1). [UMF 16].

From the time Plaintiff decided to flee on foot up until the time Officer Archuleta decided to use deadly force, Officer Archuleta believed several serious and life-threatening crimes were to be imminently committed by Plaintiff. These crimes included resisting an executive officer (*Cal. Pen. Code* § 69(a)), assault with a deadly weapon (*Cal. Pen. Code* § 245(d)(1)), murder (*Cal. Pen. Code* § 187(a)), and attempted assault and/or murder (*Cal. Pen. Code* § 664). [UMFs 41-45]. These perceived crimes are discussed in more detail below.

OFFICE OF THE CITY ATTORNEY
CHARLES PARKIN, City Attorney
333 West Ocean Boulevard, 11th Floor
Lone Beach. CA 90802-4664

13

**NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**

1

iii.    Actively Evading Arrest

2

The next *Graham* factor considered is whether Plaintiff was resisting or

3

attempting to evade arrest: this factor also weighs in favor of Officer Archuleta. It is

4

undisputed that Plaintiff attempted to flee from the police officers almost immediately

5

upon the police officers' arrival on scene. [UMF 16]. Moreover, moments prior to

6

fleeing, Plaintiff was warned by Officer Newton that a taser would be used against

7

him if he decided to flee from the detention. [UMF 15]. Plaintiff had the opportunity

8

to comply with the officers' orders and end the encounter peacefully. However,

9

Plaintiff elected to ignore the officers' commands and flee on foot. [UMF 16].

10

After Plaintiff caused a foot pursuit to ensue, Plaintiff was ordered to stop

11

running. [UMF 17]. Again, Plaintiff was given the opportunity to comply with the

12

officers' orders, yet Plaintiff chose not to do so, further escalating the encounter.

13

[UMF 17].

14

During the foot pursuit, it is undisputed that Officer Archuleta observed

15

Plaintiff reaching into his waistband area. [UMF 19]. In fact, Plaintiff admits reaching

16

into his pockets during the foot pursuit. [UMF 19; *See* Exh. 1, Dep. Clark, 44:24-45:1,

17

45:16-20]. Based on his training and experience, Officer Archuleta knew that subjects

18

conceal weapons in the waistband area and feared that Plaintiff was attempting to

19

retrieve a firearm. [UMF 20]. As a result, Officer Archuleta commanded Plaintiff to

20

"Stop reaching for your waistband!" and "Stop reaching for your waistband or you

21

will be shot!" [UMFs 21, 24]. Plaintiff was also ordered to keep his hands up in the

22

air. [UMF 41]. Again, Plaintiff was given the opportunity to comply with the Officers'

23

orders, and chose not to, which further escalated the encounter. [UMFs 22, 25].

24

Plaintiff continued to run from the police officers until he reached a dead end.

25

[UMF 25]. When Officer Archuleta eventually confronted Plaintiff face-to-face, and

26

when Officer Archuleta had a firearm pointed directly at Plaintiff, Plaintiff was issued

27

additional commands by the officers: Plaintiff refused to comply with these

28

OFFICE OF THE CITY ATTORNEY
CHARLES PARKIN, City Attorney
333 West Ocean Boulevard, 11th Floor
Long Beach, CA 90802-4664

14

**NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**

commands as well. [UMF 39]. Despite being ordered to keep his hands up and refrain from reaching towards his waistband, Plaintiff moved his right hand towards his waistband, at which time Officer Archuleta perceived an immediate threat and fired one round. [UMFs 43-45]. Plaintiff had ample opportunity to voluntarily surrender in a peaceful manner yet chose to actively evade detention and arrest. This factor also weighs in Officer Archuleta's favor.

              iv.     *Immediate Threat to the Safety of the Officers and/or Others*

The final and most important *Graham* factor is whether the individual posed an "immediate threat to the safety of the officers or others." *Graham, supra*, 490 U.S. at 396. The threat posed by Plaintiff, as perceived by Officer Archuleta, at the time of the deadly force application was both immediate and life-threatening. Plaintiff's actions under the totality of circumstances caused Officer Archuleta to reasonably believe that Plaintiff was armed and was readying to draw a firearm to shoot at him, Officer Newton, or others. [UMFs 1-45].

The uncontroverted facts show that at the time of the shooting, and in the seconds preceding the shooting, Plaintiff's right hand was open and nearing his waistband area. [UMFs 41-44]. However, Plaintiff's right hand near his waistband did not, in and of itself, lead Officer Archuleta to believe Plaintiff posed an immediate threat to his own safety and to the safety of others. Rather, the movement of Plaintiff's right hand towards his waistband amounted to an immediate threat because: Officers Archuleta and Newton had given Plaintiff numerous clear and lawful commands to stop running, to keep his hands up, and to stop reaching for his waistband [UMFs 19, 19, 20-21, 24-25, 41]; Plaintiff was refusing these commands in a high-crime area and known gang territory [UMFs 3-7, 9]; Plaintiff had previously reached into his waistband during the foot pursuit and was given lawful commands to stop reaching into his waistband [UMFs 19, 21-22, 24, 28]; Plaintiff approached a vehicle, which the officers were unaware Plaintiff had any connection to [UMFs 34-35]; there were

OFFICE OF THE CITY ATTORNEY
CHARLES PARKIN, City Attorney
333 West Ocean Boulevard, 11th Floor
Lone Beach. CA 90802-4664

15

no apparent avenues of escape for Plaintiff from the location of the shooting other than past the Officers [UMF 30]; Officer Archuleta feared that Plaintiff may attempt to carjack the vehicle or take the vehicle's occupant hostage in order to evade arrest [UMF 36]; Plaintiff had a baggy t-shirt that concealed his waistband [UMF 11]; and Officer Archuleta could not conceive of any reason Plaintiff would be reaching for his waistband other than to retrieve a firearm. [UMF 44]. Moreover, it would not have been objectively reasonable for Officer Archuleta to have waited until he saw Plaintiff produce a firearm prior to responding with deadly force. Therefore, Officer Archuleta reasonably perceived Plaintiff to be an immediate threat to his safety and to the safety of others at the time deadly force was used.

*v.        Other Factors*

Finally, the court may consider any additional specific factors relevant to the totality of the circumstances in making its force inquiry. *Mattos,* 661 F.3d at 450 (citations omitted). Other relevant factors include the availability of less intrusive alternatives to the force employed, whether proper warnings were given, and whether it should have been apparent to officers that the person they used force against was emotionally disturbed. *Glenn v. Washington County,* 673 F.3d 864, 872 (9th Cir. 2011).

First, there were no other less intrusive alternatives to counter the threat Officer Archuleta perceived when he fired at Plaintiff. Based on the totality of the circumstances, including Plaintiff's defiant behavior, Officer Archuleta reasonably believed that Plaintiff was in the process of retrieving a firearm from his waistband. In his mind, Officer Archuleta was unable to conceive of any reason for Plaintiff reaching towards his waistband other than to retrieve a firearm and use it again himself, Officer Newton, or other bystanders, especially since Plaintiff was explicitly warned that if he did reach towards his waistband, deadly force would be used. [UMF 44]. Moreover, Plaintiff had no other avenues of escape other than going past the

OFFICE OF THE CITY ATTORNEY
CHARLES PARKIN, City Attorney
333 West Ocean Boulevard, 11th Floor
Long Beach, CA 90802-4664

16

1  Officers [UMF 30], and it's difficult to imagine how Plaintiff wished to accomplish

2  his escape without using force of his own. Even when there was a uniformed police

3  officer with a firearm less than 15 yards away from him, Plaintiff failed to put his

4  hands in the air and surrender. [UMF 39]. Accordingly, there were no less intrusive

5  means to counter the deadly threat Officer Archuleta perceived to his life, Officer

6  Newton's life, and the lives of bystanders in the area.

7      Second, Officers Archuleta and Newton provided several clear and verbal

8  warnings to Plaintiff prior to using deadly force. The uncontroverted facts show that

9  Plaintiff was first warned by Officer Newton that he would be tasered if he attempted

10  to flee, yet Plaintiff fled. [UMFs 15-16]. Officer Archuleta commanded Plaintiff

11  multiple times to stop reaching for his waistband, yet Plaintiff continued to reach for

12  his waistband. [UMFs 19, 21-22, 24, 28]. Plaintiff was warned to keep his hands up,

13  yet Plaintiff never put his hands up. [UMF 39]. Therefore, multiple warnings were

14  issued to Plaintiff prior to the application of deadly force.

15      Lastly, Officer Archuleta had no information that Plaintiff was mentally or

16  emotionally disturbed. An officer is only required to consider a suspect's mental

17  illness when it is apparent that the individual is mentally disturbed. *Drummond ex rel*

18  *Drummond v. City of Anaheim*, 343 F.3d 1052, 1058 (9th Cir. 2003). While it is

19  conceivable that Plaintiff was possibly under the influence of alcohol, Officer

20  Archuleta did not have time to evaluate its impact on Plaintiff's behavior before he

21  decided to use deadly force.

22      **B.    *Even if there was a Violation of Plaintiff's Fourth Amendment***

23      ***Rights, No Clearly Established Law Existed at the Time of the Incident that***

24      ***would have put Officer Archuleta on Notice that his Use of Force was***

25      ***Unconstitutional***

26      The second prong of the qualified immunity analysis asks whether the alleged

27  constitutional right was "clearly established" at the time of the events alleged. *Cmty.*

28  *House, Inc. v. City of Boise*, 623 F.3d 945, 967 (9th Cir. 2010). Put simply, the court

OFFICE OF THE CITY ATTORNEY
CHARLES PARKIN, City Attorney
333 West Ocean Boulevard, 11th Floor
Long Beach, CA 90802-4664

17

1    asks: would it be clear to a reasonable officer that the defendant officer's conduct was

2    unlawful in the situation he confronted? *Slater v. Deasey*, 2019 WL 255236 (9th Cir.

3    2019).

4         For a Fourth Amendment right against excessive force to be deemed clearly

5    established, the Ninth Circuit instructs lower courts to "identify precedent…that puts

6    [the officer] on clear notice that using deadly force in these particular

7    circumstances would be excessive." *S.B. v. Cnty. of San Diego*, 864 F.3d 1010, 1015

8    (9th Cir. 2017). A clearly established right is one that is "sufficiently clear that every

9    reasonable official" – which excludes only the plainly incompetent and those know

10   knowingly violate the law – "would have understood that what he is doing violates

11   that right." *Kisela v. Hughes*, 138 S.Ct. 1148, 1153 (2018) (legal precedent must make

12   the alleged constitutional violation "obvious"). In other words, existing precedent

13   must have placed the statutory or constitutional question beyond debate that the

14   officer's conduct under such circumstances violated the Fourth Amendment. *Ashcroft*

15   *v. al-Kidd*, 563 U.S. 731, 741 (2011); *see also District of Columbia v. Wesby*, 138

16   S.Ct. 577, 591 (2018) (holding that to deny qualified immunity, the plaintiff and/or

17   court must provide a controlling case or robust consensus of cases that defines the

18   constitutional violation under similar circumstances).

19        Furthermore, courts may not define the clearly established right at a high level

20   of generality that covers a wide range of conduct, as that would "mak[e] it impossible

21   for officials reasonably [to] anticipate when their conduct may give rise to liability

22   for damages." *Anderson v. Creighton*, 483 U.S. 635, 639 (1987). "Such specificity

23   is especially important in the Fourth Amendment context, where the Court has

24   recognized that it is sometimes difficult for an officer to determine how the relevant

25   legal doctrine, here excessive force, will apply to the factual situation the officer

26   confronts." *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015). "In the last five years, the

27   [Supreme] Court has issued a number of opinions reversing federal courts in qualified

28   immunity cases." *White v. Pauley*, 137 S.Ct. 548, 551 (2017) (per curium).

OFFICE OF THE CITY ATTORNEY
CHARLES PARKIN, City Attorney
333 West Ocean Boulevard, 11th Floor
Lone Beach. CA 90802-4664

18

1   In *White v. Pauley*, the Court found it "again necessary to reiterate the

2   longstanding principle that clearly established law should not be defined at a high

3   level of generality;" instead, it "must be particularized to the facts of the case." *Id.* at

4   552 (internal quotations and citations omitted). The Court faulted the lower court for

5   "fail[ing] to identify a case where an officer acting under similar circumstances…was

6   held to have violated the Fourth Amendment." *Id.*

7   More recently, the Ninth Circuit in *S.B. v. County of San Diego* heeded the

8   Supreme Court's call. In that case, officers shot and killed an intoxicated man with a

9   history of mental illness who grabbed and brandished a knife. *Id.* at 1012. Although

10   the court found sufficient evidence from which a jury could find a Fourth Amendment

11   violation, it nonetheless held that the officers were entitled to qualified immunity

12   under the second prong. *Id.* at 1014-16. The court noted that the Supreme Court has

13   "repeatedly told courts - and the Ninth Circuit in particular - not to define clearly

14   established law at a high level of generality." *Id.* at 1015. In *S.B.*, the Ninth Circuit

15   responded "[w]e hear the Supreme Court loud and clear." *Id.* It went on to hold that

16   "[b]efore a court can impose liability on [an officer], we must identify precedent…that

17   put [the officer] on clear notice that using deadly force in these particular

18   circumstances would be excessive." *Id.* The Ninth Circuit referred to this as an

19   "exacting standard." *Id.* at 1017. Thus, prior case law finding a Fourth Amendment

20   violation where officers had shot an individual (1) pointing a knife at his own throat;

21   (2) pointing a knife to the sky; and (3) pointing a knife downward was insufficient to

22   place the officers in *S.B.* on notice that the alleged conduct violated a clearly

23   established constitutional right because the decedent in *S.B.* was in the process of

24   pulling the knife out of his pocket when he was shot and thus was "more

25   threatening." *Id.* at 1016. Based on that difference alone, the Ninth Circuit concluded

26   that it was not "clearly established…that using deadly force in this situation, even

27   viewed in the light most favorable to plaintiffs, would constitute excessive force under

28   the Fourth Amendment." *Id.*

OFFICE OF THE CITY ATTORNEY
CHARLES PARKIN, City Attorney
333 West Ocean Boulevard, 11th Floor
Long Beach, CA 90802-4664

19

OFFICE OF THE CITY ATTORNEY
CHARLES PARKIN, City Attorney
333 West Ocean Boulevard, 11th Floor
Lone Beach. CA 90802-4664

1   Here, in order for Plaintiff to prevail on his excessive force claim, Plaintiff must
2   convince this Court that clearly established law existed making it unconstitutional for
3   a police officer to fire one shot when: (1) the subject location was known to the
4   defendant officer as a high-crime and gang area, and defendant officer recognized
5   several known gang members near Plaintiff at the subject location [UMFs 3-7]; (2)
6   the defendant officer had previously recovered several firearms from gang members
7   near the subject location [UMF 6]; (3) prior to the subject incident, the defendant
8   officer received a briefing from his department regarding gang members threatening
9   to shoot police officers near the subject location [UMF 7]; (4) Plaintiff ran from the
10  defendant officer from the onset, despite being commanded not to [UMFs 15-16]; (5)
11  Plaintiff was issued several commands to stop and raise his hands, which Plaintiff
12  never complied with [UMFs 15-17, 21-22, 24-25, 28-29, 39]; (6) Plaintiff, while
13  fleeing, reached into his waistband, despite being commanded not to [UMFs 21-22,
14  24-25, 28-29]; (7) Plaintiff, who had a gun pointed directly at him from approximately
15  ten yards away by a uniformed officer, refused to follow the defendant officer's
16  commands and moved his open right hand towards his waistband [UMFs 39-43]; (8)
17  Plaintiff's only avenue of escape was to go past the defendant officer [UMF 30]; (9)
18  the defendant officer perceived a life-threatening and immediate threat based on
19  Plaintiff's actions and behavior [UMFs 44-45]. As discussed in more detail below,
20  the law regarding Officer Archuleta's use of deadly force in these particular
21  circumstances was not clearly established at the time of this incident.

22  As noted above, to survive qualified immunity, Plaintiff must identify
23  precedent as of July 22, 2017 – the day of the shooting – that put Officer Archuleta
24  on clear notice that using deadly force in these particular circumstances would be
25  excessive. "General excessive force principles, as set forth in *Graham* and *Garner*,
26  are 'not inherently incapable of giving fair and clear warning to officers,' but they "do
27  not by themselves create clearly established law outside an obvious case.'" *White*, 137
28  S.Ct. at 552. Instead, Plaintiff must "identify a case where an officer acting under

20

1   similar circumstances as [Defendants] was held to have violated the Fourth

2   Amendment." *Id.* Plaintiff cannot meet his burden in this case. The uncontroverted

3   facts show that no constitutional violation occurred; and that, in any event, Officer

4   Archuleta's conduct – particularized to these circumstances– did not violate a right

5   clearly established by law. Thus, Officer Archuleta is entitled to qualified immunity.

6   **V.     PLAINTIFF'S STATE LAW CLAIMS FAIL AS A MATTER OF LAW**

7           In addition to the federal claim, Plaintiff's complaint also includes claims for

8   battery, assault, and negligence under California law. The following addresses each

9   of these claims and establishes that summary judgment is appropriate.

10          **A.     Plaintiff's Assault and Battery Claims Must Fail as a Matter of Law**

11                  **Because Officer Archuleta's Use of Deadly Force was Objectively**

12                  **Reasonable Under the Circumstances**

13          Plaintiff's claims for state-law assault and battery by a peace officer mirrors

14  Section 1983 excessive force claims. *Edson v. City of Anaheim*, 63 Cal.App.4th 1269,

15  1274-1275 (1998); *see also Brown v. Ransweiler*, 171 Cal.App.4th 516, 527 (2009)

16  ("A state law battery claim is a counterpart to a federal claim of excessive use of force.

17  In both, a plaintiff must prove that the peace officer's use of force was

18  unreasonable."). Whether analyzed under federal or state law, the central inquiry is

19  whether Plaintiff was subjected to unreasonable or excessive force. *Graham*, 490 U.S.

20  at 395.

21          Defendants contend that Officer Archuleta's use of deadly force against

22  Plaintiff was objectively reasonable under the totality of circumstances as a matter of

23  law. *See Cal. Pen. Code* § 835a ("A peace officer…may use reasonable force to effect

24  [an] arrest, to prevent escape or to overcome resistance" and "[a] peace officer who

25  makes or attempts to make an arrest need not retreat or desist from his efforts by

26  reason of the resistance or threatened resistance of the person being arrested; nor shall

27  such officer be deemed an aggressor or lose his right to self-defense by the use of

28  reasonable force to effect the arrest or to prevent escape or to overcome resistance").

OFFICE OF THE CITY ATTORNEY
CHARLES PARKIN, City Attorney
333 West Ocean Boulevard, 11th Floor
Lone Beach, CA 90802-4664

21

1   Therefore, Defendants adopt the arguments set forth in section IV(A) and, if this Court

2   has already concluded that the force as reasonable under the circumstances, then

3   summary judgment on the state law claims is also appropriate. *See* Sec. IV(A), *supra*.

4   ///

5        **B.**    **Officer Archuleta was Not Negligent**

6        Plaintiff also contends that Officer Archuleta breached a duty of reasonable

7   care to Plaintiff by stopping Plaintiff without reasonable suspicion or probable cause

8   and by using improper pre-shooting tactics. (Compl. ¶¶ 38-47). For the reasons

9   discussed below, Officer Archuleta was not negligent.

10       California law shields police officers from ordinary negligence claims based

11  on their response to public safety emergencies. Rather, police officers only owe a duty

12  to use reasonable care when employing force. *Munoz v. City of Union City*, 120

13  Cal.App.4th 1077, 1099 (2014). Police officers are not required to use a particular

14  tactic or technique. *Hayes v. Co. of San Diego*, 57 Cal.4th 622, 632 (2013) ("As long

15  as an officer's conduct falls within the range of conduct that is reasonable under the

16  circumstances, there is no requirement that he or she choose the 'most reasonable'

17  action or the conduct that is the least likely to cause harm and at the same time the

18  most likely to result in the successful apprehension of a violent suspect, in order to

19  avoid liability for negligence.").

20       **1.  There was Reasonable Suspicion to Detain Plaintiff and Probable**

21           **Cause to Arrest Plaintiff**

22       As discussed in Section IV(A)(1), *supra*, an officer may conduct a brief,

23  investigatory stop where the officer has a "reasonable, articulable suspicion that

24  criminal activity is afoot." *Illinois*, 528 U.S. at 123). For the reasons set forth in

25  Section IV(A)(1), there was reasonable suspicion to detain Plaintiff on suspicion of

26  violating *Business and Profession Code* § 25620(a). Sec. IV(A)(1), *supra*; *See*

27  *Illinois,* 528 U.S. at 124 (recognizing that "nervous, evasive behavior is a pertinent

28  factor in determining reasonable suspicion"). Therefore, Officer Archuleta was not

OFFICE OF THE CITY ATTORNEY
CHARLES PARKIN, City Attorney
333 West Ocean Boulevard, 11th Floor
Long Beach, CA 90802-4664

22

1    negligent in his decision to detain Plaintiff.

2         Probable cause supports an arrest so long as the arresting officers had probable

3    cause to arrest the suspect for any criminal offense, regardless of their stated reason

4    for the arrest. *Devenpeck v. Alford*, 543 U.S. 146, 153-55 (2004). To the extent that

5    this incident may be deemed an arrest, Officer Archuleta had probable cause to

6    believe Plaintiff had resisted arrest by fleeing a lawful investigatory detention on foot

7    and disregarding their repeated commands, in violation of *California Penal Code* §

8    148(a)(1). *Accord* Sec. IV (A)(2). [UMFs 15-17, 21-22, 24-25, 28-29, 39].

9         ## 2. **Officer Archuleta's Tactical Conduct did Not Breach a Duty of**

10            **Reasonable Care**

11        In his negligence claim against Officer Archuleta, Plaintiff contends that

12    Officer Archuleta breached his duty of care by:

> 13 "negligently failing to utilize additional departmental resources"; "negligently
> 14 failing to utilize available forms of cover and concealment"; "negligently
>    failing to maintain a position of tactical advantage'"; "negligently failing to
> 15 communicate and/or effectively communicate with departmental personnel and
>    resources, and with Plaintiff'"; "negligently failing to utilize less lethal force
> 16 options and other alternatives less intrusive than deadly force"; "negligently
> 17 failing to de-escalate the situation"; "negligent employing a tactical response
>    to the situation"; "negligently failing to determine the fact that Plaintiff was
> 18 unarmed"; and "negligently employing deadly force against Plaintiff".

19

20   (Compl. ¶ 43). Under *Hayes v. County of San Diego,* a police officer may be subject

21   to negligence liability in association with a seizure-by-force in one of two ways: (1)

22   if the officer's use of force by itself was negligent, because it was unreasonable under

23   the *Graham* standard (*See* Sec. IV(A)(3)); or (2) if the officer's conduct leading up to

24   the use of force was (a) unreasonable under the *Graham* standard, and (b) negligently

25   provoked/caused the suspect to take certain actions that, in turn, prompted the officer

26   to use force. 57 Cal.4th at 625-640. Defendants contend that Officer Archuleta was

27   not negligent in any of the pre-shooting tactics he employed prior to his use of deadly

28   force. Nevertheless, unless Plaintiff can prove a proximate causal link between the

OFFICE OF THE CITY ATTORNEY
CHARLES PARKIN, City Attorney
333 West Ocean Boulevard, 11th Floor
Lone Beach, CA 90802-4664

23

1 alleged negligent pre-shooting conduct and Officer Archuleta's use of deadly force,

2 he cannot prevail on his negligence claim based on pre-shooting tactics. *Id.*

3        In *Mulligan v. Nichols*, the Ninth Circuit effectively underscored that there

4 must be a proximate causal link between the alleged negligent pre-force conduct and

5 the ultimate use of force in dispute. 835 F.3d 983, 991-992 (9th Cir. 2016); *see also*

6 *Gonzalez v. City of Antioch*, 697 Fed.Appx. 900, 901-902 (9th Cir. 2017). Similarly,

7 in *Vos v. City of Newport Beach*, the Court rested its holding on the pre-shooting

8 tactical negligence claim on whether the officers unreasonably provoked the suspect's

9 action that, in turn, prompted the officers' use of deadly force. 2016 U.S. Dist. LEXIS

10 152248, *1-4, 13-19, 23-27 (C.D. Cal. 2016). In doing so, the *Vos* Court held that:

> 11 "[A] court should not consider this [pre-shooting conduct] in isolation: it must
> 12 not 'divide plaintiffs cause of action artificially into a series of decisional
> moments.' This would wrongly allow a plaintiff 'to litigate each decision in
> 13 isolation, when each is part of a continuum of circumstances surrounding a
> single use of deadly force.' Therefore, [for a pre-shooting tactical negligence
> 14 claim] when the pre-shooting conduct did not independently injure the plaintiff;
> 15 a court should consider the pre-shooting conduct *only* to determine whether
> deadly force was reasonable."
> 16

17 *Id.* at 23-27 (citations omitted) (emphasis added). Thus, the *Vos* case likewise

18 underscores that an officer's pre-force tactical conduct to be actionable under state

19 law, the conduct must unreasonably provoke the suspect to take the action that, in

20 turn, prompted that officer to use the force at issue. *Id.*

21        Here, no reasonable factfinder could find that Officer Archuleta's pre-shooting

22 tactics caused the shooting. Officer Archuleta did not unreasonably provoke Plaintiff

23 to flee from a lawful detention, which – in turn – eventually led to Officer Archuleta's

24 use of deadly force. In fact, Plaintiff fled merely because police officers had arrived

25 at the subject location [UMF 16]; thus, Plaintiff cannot establish a proximate causal

26 link between the alleged negligent pre-force conduct and the ultimate use of force in

27 dispute. As noted by *Hayes*, "as long as the officer's conduct falls within the range of

28 conduct that is reasonable under the circumstances, there is no requirement that he or

OFFICE OF THE CITY ATTORNEY
CHARLES PARKIN, City Attorney
333 West Ocean Boulevard, 11th Floor
Long Beach, CA 90802-4664

24

NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OR, IN THE
ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

1  she choose the 'most reasonable' action or the conduct that is the least likely to cause

2  harm and at the same time the most likely to result in the successful apprehension of

3  a violent suspect, in order to avoid liability for negligence." 57 Cal.4th at 632.

4  Although pre-shooting conduct is included in the totality of circumstances, this is not

5  to suggest that a particular pre-shooting protocol is always required. Law enforcement

6  personnel have a degree of discretion as to how they choose to address a particular

7  situation. *Id.* at 623. Thus, Plaintiff's negligence claim must fail as a matter of law.

8  **VI.   THE CITY IS ENTITLED TO JUDGMENT AS A MATTER OF LAW**

9  **ON PLAINTIFF'S STATE CAUSES OF ACTION**

10  **A.   The City has No Direct Liability**

11  Plaintiffs have not established any basis for direct liability against a public

12  entity in California.  Direct tort liability of public entities must be based on a specific

13  statute declaring the entity to be liable, or at least creating some specific duty of care;

14  otherwise, the general rule of immunity for public entities would be largely eroded by

15  the routine application of general tort principles. *Eastburn v. Regional Fire Protection*

16  *Authority*, 31 Cal.4th 1175, 1183 (2003); *Cal. Gov. Code* § 815 (Duties owed by the

17  municipality must be based in statute). Here, there is no evidence that Defendant City

18  owed any duty to Plaintiff, because there is no evidence of any special relationship.

19  *Davidson v. City of Westminster*, 32 Cal.3d 197 (1982).

20  **B.   Plaintiff Cannot Hold the City Vicariously Liable**

21  As the uncontroverted facts show that Plaintiff cannot establish that Officer

22  Archuleta has any state law tort liability, the City has no vicarious liability for his

23  conduct under *Government Code* section 815.2.

24  / / /

25  / / /

26  / / /

27

28

OFFICE OF THE CITY ATTORNEY
CHARLES PARKIN, City Attorney
333 West Ocean Boulevard, 11th Floor
Long Beach, CA 90802-4664

25

**NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OR, IN THE
ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**

## VI.   CONCLUSION

Based on the above, Defendants respectfully move this Court to grant summary judgment in their favor as to Plaintiff's entire Complaint. In the alternative, Defendants respectfully move this Court to grant partial summary judgment where appropriate.


DATED:  July 22, 2019

CHARLES PARKIN, City Attorney

By:  */s/ Matthew M. Peters*
MATTHEW M. PETERS
Deputy City Attorney
Attorneys for Defendants,
CITY OF LONG BEACH and
FERNANDO ARCHULETA

OFFICE OF THE CITY ATTORNEY
CHARLES PARKIN, City Attorney
333 West Ocean Boulevard, 11th Floor
Long Beach, CA 90802-4664

26

**NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**

OFFICE OF THE CITY ATTORNEY
CHARLES PARKIN, City Attorney
333 West Ocean Boulevard, 11th Floor
Long Beach, CA 90802-4664

1

**PROOF OF SERVICE**

2

STATE OF CALIFORNIA      )
                         )  ss
3

COUNTY OF LOS ANGELES )

4

I am employed in the County of Los Angeles, State of California.  I am over the age of eighteen and I am not a party to the within entitled action.  My business address is 333 W. Ocean Blvd., 11th Floor, Long Beach, California 90802-4664.

5

6

On July 22, 2019, I served the within: **DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**

7

8

on all interested parties in said action, by placing a true copy and/or original thereof enclosed in sealed envelopes addressed as follows:

9

10

Brian T. Dunn, Esq.
Megan Gyongyos, Esq.
THE COCHRAN FIRM
4929 Wilshire Boulevard, Suite 1010
Long Beach, CA 90807
Facsimile: (323)282-5280

11

12

13

*Attorneys for Plaintiff*

14

☒      **BY MAIL**:  I am "readily familiar" with the **firm's practice** of collection and processing of correspondence for mailing.  Under that practice it would be deposited with the U.S. postal service on that same day with postage thereon fully prepaid at Long Beach, California in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

15

16

17

18

☐      **BY PERSONAL SERVICE**:  I caused to be delivered such document(s) by hand to the person(s) stated above.

19

20

☒      **BY ELECTRONIC MAIL**:  In addition to the above service by mail, hand delivery, or UPS, I caused said document(s) to be transmitted by scanning the document into a PDF or comparable electronic format and sent that document by email transmission.

21

22

Executed on July 22, 2019, at Long Beach, California.

23

☒      (**Federal**) I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

24

25

_____

26

Vanessa Quiroz

27

28

27

**NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**